UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL PARSON,                          :
          Plaintiff                     :
                                        :
     vs.                                :     CIVIL NO. 13-CV-2335
                                        :
                                        :
CARLISLE BOROUGH, BARRY                 :
WALTERS, CHIEF STEPHEN                  :
MARGESON,                               :
          Defendants.                   :
                                        :
                                        :

M E M O R A N D U M

*I.*        *Introduction*

          We are considering a motion by Defendants Carlisle Borough, Barry

Walters, and Chief Stephen Margeson (collectively, "Defendants") to dismiss Plaintiff's

amended complaint.  (Doc. 24).  Plaintiff, a police officer in the Borough of Carlisle, filed

this Section 1983 lawsuit on September 9, 2013.  (Doc. 1).  Plaintiff claims in eight

counts that Defendants violated his First Amendment right to free speech; his Fourteenth

Amendment right to substantive due process; the Omnibus Crime Control and Safe

Streets Act; the Pennsylvania Wiretapping Act, and invaded his privacy.  (Doc. 17).  On

January 24, 2014, Defendants filed the instant motion to dismiss the amended

complaint.[1]  For the following reasons, we will grant the motion.

_____

1.  Defendant Margeson is Chief of Police for the Borough of Carlisle.  Defendant Walters
is a Lieutenant in the Carlisle Borough Police Department.

II.        *Background*

On September 1, 2011, Plaintiff was severely injured during an attempted arrest.  (Doc. 17, ¶¶ 10-11).  While seeking treatment for his injuries, Plaintiff was diagnosed with Attention Deficit and Hyperactivity Disorder ("ADHD").  (Id. ¶ 12).  Although Plaintiff returned to work after the accident, he experienced persistent pain.  (Id. ¶ 13).  He reported this and his ADHD diagnosis to his superiors, Defendants Margeson and Walters.  (Id. ¶¶ 15, 17).  Defendant Walters routinely harassed Plaintiff about having ADHD.  (Doc. 17, ¶¶ 22, 25).  Although Plaintiff requested leniency at work, he was given no special accommodations, and received demerits for submitting reports that omitted minor details.  (Id. ¶ 45).  In April 2012, Plaintiff was again injured while attempting to apprehend a suspect and suffered a possible hernia.  (Id. ¶¶ 28-31, 40).  He returned to work, but experienced extreme pain throughout May 2012.  (Id. ¶¶ 41-42).  Plaintiff suffered a third injury in "April or May" of 2012 while lifting boxes at a traffic accident.  (Doc. 17, ¶ 49).  Following this injury, Plaintiff requested a meeting with the police department lieutenants, Chief Margeson, and Sergeant Latshaw.  (Id. ¶¶ 49-51).  Plaintiff related that he continued to experience severe pain, as well as difficulties due to ADHD.  (Id. ¶¶ 52-54).

On September 16, 2012, Plaintiff received a phone call from Defendant Walters, who told Plaintiff that he had been demoted.  (Doc. 17, ¶¶ 61-63).  During the course of this conversation, Plaintiff made unflattering comments about another police officer.  (Id. ¶ 67).  The following day, that officer confronted Plaintiff regarding the

statements.  The officer told Plaintiff that Defendant Walters had recorded the call and subsequently played the recording for several officers.  (Id. ¶¶ 69-71).  Plaintiff reported this incident to the Human Resources Director for the Borough of Carlisle, the Carlisle Borough Manager, several Borough Council members, Officer Fones, and Defendant Margeson.  (Id. ¶¶ 76-78, 92).  Plaintiff also notified the Cumberland County District Attorney's Office ("DA's Office") about the incident.  (Id. ¶ 92).  Since contacting the DA, Plaintiff has suffered "increasing retaliation in the form of ostracism and criticism in the workplace . . . ."  (Id. ¶ 93).

III.        Discussion

A.  Standard of Review

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).   While a complaint need only contain "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."   Id. at 570.   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully."   Ashcroft v. Iqbal, 556 U.S. 662,

129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556).   "[L]abels and

conclusions" are not enough, and a court is "'not bound to accept as true a legal

conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoted case

omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis."

Fowler, supra, 578 F.3d at 210.   First, we separate the factual elements from the legal

elements and disregard the legal conclusions.  Id. at 210-11.   Second, we "determine

whether the facts alleged in the complaint are sufficient to show that the plaintiff has a

'plausible claim for relief.'" Id. at  211 (quoted case omitted).

*B. First Amendment Claims (Counts I and II)*

Plaintiff claims that Defendants deprived him of his First Amendment right

to free speech in two ways:  first, Defendants harassed Plaintiff when he spoke about his

medical issues and his need for accommodations at work; and second, Defendants

retaliated against him after he reported their actions to the Carlisle Borough Council and

the DA's Office.  (Doc. 17, ¶ 109, 123).  "When a public employee sues a government

employer under the First Amendment's Speech Clause, the employee must show that he

or she spoke as a citizen on a matter of public concern." Borough of Duryea v.

Guarnieri, 131 S. Ct. 2488, 2493 (2011).  If the speech in question concerns a personal

matter, and does not relate to "any matter of political, social, or other concern to the

community," then "government officials should enjoy wide latitude in managing their

4

offices, without intrusive oversight by the judiciary in the name of the First Amendment."

Connick v. Myers, 461 U.S. 138, 146 (1983).  Speech that relates to a private

employment issue is not a matter of public concern, and is not protected.  See, e.g.,

Emigh v. Steffee, 442 F. App'x 660, 666 (3d Cir. 2011) (state police officer's complaint

against another officer was not protected speech); Campbell v. W. Pittston Borough, 498

F. App'x 186 (3d Cir. 2012) (police officer's age discrimination claim was a matter of

personal interest).

       Here, Plaintiff's medical problems and requests for accommodations are

not matters of public concern, and therefore, this speech is not protected.  Although this

court does not condone bullying in the workplace, we have explained before that a police

officer's complaint that another officer is "picking" on him or her is not a matter of public

concern.  Conard v. Pa. State Police, No. 06-1450, 2009 WL 473859, at *4 (M.D. Pa.

Feb. 25, 2009).  "[A]bsent the most unusual circumstances, a federal court is not the

appropriate forum in which to review . . . personnel decision[s] taken by a public agency .

. . ." Id. at *3 (quoting Connick, 461 U.S. at 147).

       Similarly, Plaintiff's complaints to the Carlisle Borough Council and the DA's

Office are not protected by the First Amendment.  Plaintiff alleges that he suffered

retaliation after he reported the wiretapping incident to the DA.  (Doc. 17, ¶¶ 91-92).

Plaintiff argues that this retaliation violated his constitutional rights because this speech

concerned a matter of public interest.  Specifically, Plaintiff states that "[a] community

has an interest in knowing when high-ranking members of its police force . . . commit

illegal actions which are not being remediated by the Chief of Police or the Borough itself." (Doc. 29 at 12). In order to be a matter of public concern, the speech at issue must have some impact on the broader community. See, e.g., Zamboni v. Stamler, 847 F.2d 73, 77 (3d Cir. 1988) (civil service employee's criticism of county prosecutor's plans for reorganization is protected); Monsanto v. Quinn, 674 F.2d 990, 996-97 (3d Cir. 1992) (tax department employee's letters to tax commissioner expressing dissatisfaction with management of tax division is protected); Trotman v. Bd. of Trustees of Lincoln Univ., 635 F.2d 216, 225 (3d Cir. 1980) (professor's criticism of university president's efforts to increase faculty/student ratio is protected). We agree with Defendants that Plaintiff's decision to involve the DA does not turn this otherwise personal issue into a matter of public concern. No criminal charges have been filed against Defendant Walters, so Plaintiff's statement regarding Walters' "illegal actions" is conclusory. The wiretapping incident is a matter between Walters and Plaintiff, and does not involve other Borough employees or the community at large. Accordingly, Plaintiff's complaints to the DA and the Borough are not protected by the First Amendment. We will dismiss Counts I and II of the amended complaint with prejudice.[2]

---

2. In his brief, Plaintiff claims that he also reported Defendants' failure to accommodate his disabilities to the DA's office and the Borough. (Doc. 29 at 11). We agree with Defendants that Plaintiff failed to plead these facts in his amended complaint. According to the amended complaint, the only issue that Plaintiff brought to the attention of the DA and the Borough Council was the wiretapping incident. See Doc. 17 at ¶¶ 91-92, 123.

*C.  Fourth Amendment Claim (Count III)*

In Count III, Plaintiff claims that Defendant Walters violated his Fourth

Amendment rights by tape recording the phone conversation that took place between

them, and replaying the conversation for other officers.  Defendants argue that this claim

should be dismissed because Plaintiff lacked a reasonable expectation of privacy in this

conversation, or, alternatively, that Defendants are entitled to qualified immunity.  For the

following reasons, we find that Plaintiff has stated a Fourth Amendment claim, but

because Defendants are entitled to qualified immunity, we will dismiss Count III.

In Hoffa v. United States, 385 U.S. 293 (1966), the Supreme Court held

that in the context of a criminal investigation, no Fourth Amendment violation occurs

when a conversation is recorded with the consent of one of the parties.  The Court wrote:

"Neither this Court nor any member of it has ever expressed the view that the Fourth

Amendment protects a wrongdoer's misplaced belief that a person to whom he

voluntarily confides his wrongdoing will not reveal it."  Id. at 302.  This principle has been

reinforced by several courts, including the Third Circuit.  See United States v. Lee, 359

F.3d 194, 201 (3d Cir. 2004).

However, in Diana v. Oliphant, No. 05-cv-2338, 2007 WL 3491856 (M.D.

Pa. Nov. 13, 2007) (Caputo, J.), the court distinguished criminal wiretapping cases

involving a police informant from civil cases where the aggrieved party is not a

wrongdoer.  Diana was a Pennsylvania state trooper whose phone call with another

trooper regarding an administrative matter was recorded without his knowledge.  Id. at

7

*1.  The <u>Diana</u> court reasoned that while "a wrongdoer speaks at his own risk[,]" a civil

plaintiff may have an actual and reasonable expectation of privacy in their phone call with

another individual.  <u>Id.</u> at *8-11 (citing <u>PBA Local No. 38 v. Woodbridge Police Dep't</u>, 832

F. Supp. 808 (D.N.J. 1993); <u>Walden v. City of Providence</u>, 495 F. Supp. 2d 245 (D.R.I

2007); and <u>Abbott v. Villiage of Winthrop Harbor</u>, 953 F. Supp. 931 (N.D. Ill. 1996)).

Without disturbing this holding, the Third Circuit found on appeal that the offending

officers in <u>Diana</u> were nevertheless entitled to qualified immunity.[3]  <u>See</u> <u>Diana v.</u>

<u>Oliphant</u>, 441 F. App'x 76 (3d Cir. 2011).  Specifically, the court explained that "in 2003[,]

[it] was not clearly established that the ordinary course exception in Title III did not apply

to the officers' actions in recording an administrative phone call to another offer."  <u>Id.</u> at

80.  "[A] reasonable officer in appellants' position would not have known that he or she

was violating clearly established law in calling another officer on a recorded line."  <u>Id.</u>

       Like Diana, Plaintiff may have had a reasonable expectation of privacy in

his phone call with Defendant Walters, and thus he has properly stated a Fourth

Amendment claim.  However, pursuant to the Third Circuit's decision in <u>Diana</u>, we find

that Defendants are entitled to qualified immunity.  The contours of a police officer's right

to privacy in a phone call with another officer are still not sufficiently clear that a

---

3.  Qualified immunity analysis involves two steps.  First, we examine whether the
government official violated a constitutional or federal right.  <u>Diana v. Oliphant</u>, 441 F.
App'x 76, 80 (3d Cir. 2011).  Second, "we determine whether the right at issue was
'clearly established'" at the time of the alleged violation.  <u>Id.</u>  An officer who "made a
reasonable mistake about the legal constraints on his actions" is entitled to qualified
immunity.  <u>Id.</u> (internal quotation omitted).

reasonable officer would recognize that tape-recording the call would violate this right. See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Therefore, we will dismiss Count III with prejudice.

### D.  Substantive Due Process Claims (Counts IV and V)

Plaintiff also claims that Defendants deprived him of his right to substantive due process.  The Fourteenth Amendment prohibits the states from depriving any person of "life, liberty, or property, without due process of law."  U.S. CONST. AMEND. 14.  To succeed on a substantive due process claim, a plaintiff must establish that he was deprived of a fundamental right.  Nicholas v. Pa. State Univ., 227 F.3d 133, 139-40 (3d Cir. 2000).  The government's actions must be arbitrary, irrational, or shocking to the conscience.  Id. at 139.

The amended complaint fails to specify which of Plaintiff's fundamental rights were allegedly violated.  For the purposes of this motion, Defendants assume that Plaintiff is alleging a violation of his right to public employment.  As Defendants correctly observe, our courts have clearly stated that there is no fundamental right to retain public employment.  See Hill v. Borough of Kutztown, 455 F.3d 225, 235 n.12 (3d Cir. 2006). To the extent that Plaintiff is alleging a violation of this right, we agree with Defendants that the claim should be dismissed.

However, in Plaintiff's response to Defendants' motion to dismiss, Plaintiff claims that it was his fundamental right to *privacy* that was infringed by Defendants' actions.  (Doc. 29 at 16).  There are two steps involved in analyzing a privacy claim.

First, we must determine whether the information is entitled to protection.  C.N. v.
Ridgewood Bd. of Educ., 430 F.3d 159, 179 (3d Cir. 2005).  To do this, we examine
whether the information is "within an individual's reasonable expectations of privacy.  The
more intimate or personal the information, the more justified is the expectation that it will
not be subject to public scrutiny."  Warner v. Twp. of S. Harrison, 885 F. Supp. 2d 725,
737 (D.N.J. 2012) (citing Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105,
112-13 (3d Cir. 1987)).  If a privacy interest is implicated, the second step is to weigh the
competing interests and decide whether disclosure was justified.  C.N., 430 F.3d at 179-
80.

       The amended complaint alleges the following:  Defendant Walters called
Plaintiff and asked if he had received a letter from Defendant Margeson.  (Doc. 17, ¶ 62).
Walters did not tell Plaintiff that the call was being recorded.  (Doc. 17, ¶ 68).  Plaintiff
responded that he had not received a letter, so Walters told Plaintiff that he and
Lieutenant Dzezinski had been demoted.  (Doc. 17, ¶¶ 62-63).  Walters suggested that
Plaintiff tell others that he had voluntarily given up the Officer in Charge position that he
held.  (Doc. 17, ¶ 66).  Plaintiff stated that he would not do that, and told Walters that he
did not trust Lieutenant Dzezinski, because he thought Dzezinski "had a big mouth."
(Doc. 17, ¶ 67).  The next day, Lieutenant Dzezinski confronted Plaintiff regarding his
comments, and told him that Walters' call had been recorded.  (Doc. 17, ¶¶ 69-70).  He
also told Plaintiff that the recording had been played for other officers.  (Doc. 17, ¶ 71).

10

These facts do not support a constitutional claim for violation of privacy. The federal constitution protects against disclosure of "'highly personal matters' representing 'the most intimate aspects of human affairs.'"  Nunez v. Pachman, 578 F.3d 228, 231-32 (3d Cir. 2009).  "[T]o violate [a person's] constitutional right of privacy the information must be either a *shocking degradation* or an *egregious humiliation* . . . ."  Id. at 232 n.8.  According to the complaint, the only information that was revealed here was that Plaintiff thinks Lieutenant Dzezinski "has a big mouth."  Plaintiff's opinion of Lieutenant Dzezinski is not the type of "highly personal" information that is constitutionally protected from disclosure.  Although Plaintiff claims in his brief in opposition to Defendants' motion that he "discussed his medical condition and need for accommodations," during this call, and that he "did not wish to disclose this information to the public," none of these facts are alleged in the complaint.  (Doc. 29 at 17).  Only the privacy allegations made in the complaint should be analyzed when ruling on a motion to dismiss.  Ritter v. Virtue, No. 09-1250, 2010 WL 1433130, at *1 (M.D. Pa. April 7, 2010). Because Plaintiff failed to allege any facts supporting a claim for violation of privacy, we will dismiss counts VI and V.

*E.  Omnibus Crime Control and Safe Streets Act Claim (Count VI)*

In Count VI Plaintiff brings a claim against Defendant Walters for violation of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 *et seq*, which prohibits the intentional, unauthorized interceptions and disclosures of wire, oral, and electronic communications.  The statute excepts from liability "person[s] acting under

color of law . . . where such a person is a party to the communication . . . ."  18 U.S.C. § 2511(2)(c).  Defendant Walters argues that he could not have violated the Act because he was acting under color of law when he made the phone call to Plaintiff, and he was a party to the conversation.  We disagree.  As explained by the Seventh Circuit in Thomas v. Pearl, 998 F.2d 447, 451 (7th Cir. 1993), "[m]ost cases that arise under the wiretapping act involve law enforcement officers gathering evidence against suspected criminals.  The exemption in § 2511 for officials acting under color of law was evidently designed to aid police in ensnaring lawbreakers, not to unleash upon society millions of government workers--armed with recording devices strapped to their phones–seeking to invade the privacy of individuals neither suspected nor accused of committing crimes."  Accordingly, the court declared that "there must be some logical and reasonable connection between the government workers' job description and eavesdropping."  Id. Under this formulation, and based on the allegations in the amended complaint, we find that Plaintiff has stated a claim for violation of the federal wiretapping statute. Nonetheless, based on the Third Circuit's decision in Diana v. Oliphant, discussed *supra*, Defendants' are entitled to qualified immunity on this claim.  See Diana, 441 F. App'x at 81 (holding that officers who recorded a phone call with another officer were entitled to qualified immunity because "it was not 'beyond debate' that their actions did not fall into the ordinary course exception" to the statute).  Therefore, we will dismiss this claim with prejudice.

*F.  Supplemental State Law Claims (Counts VII and VIII)*

In addition to the federal claims discussed *supra*, Plaintiff brings a state law claim for invasion of privacy, and a claim pursuant to the Pennsylvania Wiretapping Act, 18 Pa. Cons. Stat. Ann. § 5700, *et seq.*  Having dismissed all of the federal claims over which we had original jurisdiction,[4] we decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).  See Elkadrawy v. Vanguard Grp., Inc., 584 F.3d 169, 174 (3d Cir. 2009).

*III.          Conclusion*

For the reasons above, Defendants' motion to dismiss will be granted. Leave to amend the dismissed claims will be denied as futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002) (allowing courts to deny leave to amend if such an amendment would be futile).  We will issue an appropriate order.


/s/William W. Caldwell
William W. Caldwell
United States District Judge

---

4.  The amended complaint contains a reference to a civil conspiracy claim.  (Doc. 17, ¶ 1).  In his brief in opposition to Defendants' motion, Plaintiff notes that the inclusion of this claim was an error, and that he is voluntarily withdrawing this claim.  (Doc. 29 at 24).